JOSEPH PROCOPIO, PETITIONER-RESPONDENT, v. FOSS & VOIGHT, INC., RESPONDENT-APPELLANT.

Essex County Court
Law Division

Decided December 11, 1950.

*Mr. Gerald Foley* (*Mr. Francis Forman* appearing), for the respondent-appellant.

*Mr. Carl F. Nitto* (*Mr. Joseph P. Piscopo* appearing), for the petitioner-respondent.

CONLON, J. C. C. This is an appeal from an award to the petitioner for temporary and permanent disability. Appellant seeks a reversal on two grounds: (1) that the relationship of employer and employee did not exist between the parties, and (2) that the award of 20% of total permanent disability was excessive. The second ground is without merit since the determination of the Deputy Director in that respect is amply justified from the record.

The question whether the employer-employee relationship existed presents a more difficult problem. The facts, in the main, are not in dispute and may be stated as follows:

Respondent is a distributor of linoleum and other materials. Petitioner had been engaged for some time before the accident in delivering merchandise for the respondent. He owned his truck and was compensated on the basis of the tonnage he handled—$7 a ton in New Jersey, and $9 a ton in New York. At times he employed a helper. He was not carried on respondent's payroll and no social security deductions were taken from his compensation. Each morning the petitioner reported at respondent's warehouse and there picked up the day's deliveries. The load was carried to the tailboard of his truck by employees of the respondent and there transferred to the truck by the petitioner with the assistance at times of his brother, and at other times of employees of respondent. He would then deliver the load and return to his home. He

was never paid for overtime. The respondent's employees saw to it that the last items to be delivered were loaded first and the first items to be delivered were loaded last. Petitioner sustained a herniated disc injury in his back while in the process of lifting a roll of linoleum from his truck.

The above are essentially the facts considered by the Deputy Director of the Bureau in concluding that an employer-employee relationship existed. However, a reading of the record discloses the additional fact that petitioner operated not one but two trucks, when the *quantum* of deliveries required. Julian Foss, the president of the respondent corporation, testified as a witness for the petitioner as follows: "Q. Can you tell us, if you know, the number of trucks which he (the petitioner) used in that work? A. Most of the time he used one, but he had a smaller truck that he used if he were busier." No attempt was made to controvert this statement. The petitioner stated that he and his brother worked "a lot together" and also that he worked alone "when there wasn't enough work for two men" because then "there is no percentage." Petitioner, throughout a major part of his testimony, spoke of "us" and "we" in referring to the carrying out of the arrangement with the respondent and undoubtedly meant those words to include his brother and himself. It must be concluded that the petitioner operated not one but two trucks, and that the second truck was driven by his brother before the accident. This phase of the evidence does not appear to have been considered by the Bureau although it has considerable bearing on the question as to whether or not an employer-employee relationship existed. After the accident petitioner continued his trucking operations for the respondent by having his brother operate a truck and going along "just to kill the day." When the work required, the petitioner at his own expense and without being ordered to do so, hired a helper to assist his brother make deliveries. There is no evidence that the brother ever had any contractual or other arrangement with the respondent or that he was ever considered to be one of respondent's employees. There

was no written or verbal agreement between the parties as to their relationship. The petitioner testified: "We didn't have no arrangement, no nothing." Therefore the relationship must be determined from the actions of the parties.

█ Our courts continuously have given a liberal construction to the Compensation Act in concluding that an employer-employee relationship exists in situations similar to the one here presented. The general rule established is that where the respondent retains control over the conduct of the petitioner in prescribing the manner in which the work is performed the theory of independent contractor is ruled out.

Consideration has been given to the following cases presented by counsel in their arguments and briefs: *Busch v. Seaboard By-Product Coke Co.,* 100 *N. J. L.* 304 (*E. & A.* 1924); *Burdick v. Liberty Motor Freight Lines,* 128 *N. J. L.* 229 (*Sup. Ct.* 1942); *Cappadonna v. Passaic Motors, Inc.,* 136 *N. J. L.* 299 (*Sup. Ct.* 1947); affirmed, 137 *N. J. L.* 661 (*E. & A.* 1948); *Geary v. Simon Dairy Products Co.,* 7 *N. J. Super.* 88 (*App. Div.* 1950); *Mayo v. Hunt's Theatres,* 1 *N. J. Super.* 8 (*App. Div.* 1948); and *American Carrier Corp. v. Avigliano,* 123 *N. J. L.* 490 (*Sup. Ct.* 1939). An examination thereof discloses the extent to which our courts have gone in deciding that an employer-employee relationship exists where the alleged employee operates a truck in connection with the employer's business. The case most analogous in its facts to the case *sub judice* is *American Carrier Corp. v. Avigliano, supra,* in which the following situation was presented. Respondent transported freight by motor vehicles between Newark, New York and Pennsylvania. It advertised in a newspaper "Truckmen wanted: guaranteed to earn $40 per week; must be able to purchase their own truck from us," &c. While the terms of employment mentioned a weekly salary of $40 it appears that petitioner's deceased was to be paid at the rate of $3.60 a ton for freight delivered to Scranton and $4 a ton to Binghamton. The deceased purchased his truck from respondent on a conditional sales contract and operated in the name of the respondent since he could not

operate in his own name under the interstate commerce rules. Apart from the destination no other instructions were given. The respondent loaded the truck by their employees and sent an employee along with the deceased. The Supreme Court decided that while "the question is a somewhat close one" the evidence established such control over the conduct of the deceased doing his work as to negative the theory of independent contractor. The court distinguished the facts before it from the case of *Busch v. Seaboard By-Product Coke Co., supra* (not a compensation case), in that in the *Busch case* the truckman employed the driver and helper and was not himself operating the truck at the time of the accident.

■ The present case also is distinguishable. The arrangement between the parties was clearly inconsistent with an employer-employee relationship. It is apparent that petitioner was paid for the trucking he did and not for his own services. The respondent had no control over what truck he used or how he operated it. It paid for the tonnage transported regardless of who actually drove the truck. There is no contention that petitioner's brother, the other member of the "we," so often referred to by the petitioner, had any connection with the respondent. The brother was compensated by petitioner and not by the respondent. The respondent never sent any of its employees along on the trucks nor was petitioner required to purchase the trucks from the respondent. After the accident the arrangement continued unchanged between the parties even though the work previously performed by the petitioner then was taken over by his brother. The evidence negatives any employer-employee relationship between the parties and establishes the petitioner as an independent contractor.

The determination of the Bureau is reversed and the petition is dismissed.

A determination in accordance with this memorandum should be presented on notice.